IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| ELIZABETH VOLLENWEIDER-LEOS, | |
| Plaintiff, | No. C07-0119 |
| vs. | REPORT AND RECOMMENDATION |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | |
| Defendant. | |

————————————————

## TABLE OF CONTENTS

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*II.*    *FACTUAL BACKGROUND & PROCEEDINGS* . . . . . . . . . . . . . . . . . . 2

*III.*    *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*IV.*    *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     *A.*    *Whether Hartford Abused Its Discretion in Terminating Leos' LTD Benefits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     *B.*    *Attorney Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*V.*    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*VI.*    *RECOMMENDATION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I. INTRODUCTION

This matter comes before the Court on the Complaint and Jury Demand (docket number 1) filed by Plaintiff Elizabeth Vollenweider-Leos ("Leos") on October 26, 2007, seeking recovery and reinstatement of long-term disability ("LTD") benefits under an employee welfare benefit plan sponsored by her employer MCI Worldcom, Inc. ("MCI"), and insured by Defendant Hartford Life and Accident Insurance Company ("Hartford").

Leos requests payment of LTD benefits from February 28, 2006 (the date her benefits were terminated) to the present, and payment of future LTD benefits pursuant to the terms of the benefit plan. Hartford's request for oral argument is denied. Pursuant to Local Rule 7.c, this matter will be decided without oral argument.

## II. FACTUAL BACKGROUND & PROCEEDINGS

Leos was employed by MCI from 1984 through 2002. In March 2002, Leos developed low back pain. On March 12, 2002, she was awarded short-term disability benefits under a group insurance policy issued by Hartford. The expiration date for Leos' short-term disability benefits was September 9, 2002.

On June 3, 2002, Leos was evaluated by Dr. Kevin R. Eck, M.D., for back pain. Dr. Eck determined that Leos had lumbar spondylosis with decreased disc height at the L5-S1 level. On July 15, 2002, Leos had a follow-up appointment with Dr. Eck. She indicated that her back pain had not changed since June 2002, and elected to have spinal fusion surgery. Dr. Eck performed the surgery on August 23, 2002.

Following her surgery, Leos had problems with right foot drop and right L4-5 radiculopathy. Because her short-term disability benefits were set to expire on September 9, 2002, she applied for LTD benefits. On September 12, 2002, Hartford approved Leos' claim for LTD benefits.[1]

On November 13, 2002, Dr. Eck opined that Leos had:

> significant physical restrictions both in terms of recovery following her fusion operation and as a result of a foot drop she developed from the surgery. She is making some progress with physical therapy but I think will have significant limitations possibly for some time or on a permanent basis. I think at this point I really think she should not participate in heavy manual activity. I really don't want her lifting much more than 30 pounds or doing any excessive twisting or bending through her lumbar spine. . . . Certainly there shouldn't be any limitations on what she can do with her upper

---

[1] *See* Administrative Record at 000708-000710.

2

extremities. So at this point I think she could return to work in a limited capacity as described above.

(Administrative Record at 000278.)

On December 18, 2002, and January 13 and 14, 2003, Leos underwent a "Functional Capacity Evaluation" ("FCE") performed by an occupational therapist, Amy K. Wenger ("Wenger"). On the FCE report, Wenger noted that Leos:

provided a consistent maximum effort limited by pain during the Functional Capacity Evaluation. Performance on test items does corroborate with the initial musculoskeletal evaluation and test items repeating day 1 to day 2 of testing. Cardiovascular response to activity was consistent with maximum effort with expected increases in heart rate in response to activity. Cardiovascular response to activity also indicates fair physical conditioning.

(Administrative Record at 000280.) Wenger also recorded Leos' pain levels (based on a scale of 0 to 10 with 10 being excruciating pain) as follows: (1) prior to testing, her pain level was 4.5-5; (2) after the first day of evaluation, her pain level was 5-5.5; (3) after the second day of evaluation, her pain level was 8.5-9; and (4) after her third day of evaluation, her pain level was 8.[2] Upon evaluation, Wenger determined that Leos could: (1) sit for 30-40 minutes in an hour; (2) stand for 15-20 minutes in an hour with a maximum of 5 minute durations per period of time; and (3) walk, using a cane, for 20 minutes in an hour with a maximum of 5 minute durations per period of time.[3] Wenger opined that Leos could not alternately sit/stand/walk for an eight-hour period of time, but could alternately sit/stand/walk for four hours at one time.[4] Wenger concluded that based

---

[2] *See* Administrative Record at 000280.

[3] *Id.* at 00284.

[4] *See* Administrative Record at 000284.

on her performance of the FCE, Leos could perform sedentary work, but recommended a four-hour maximum workday.[5]

On January 28, 2003, Dr. Eck issued a report based on Leos' FCE evaluation. The report allowed for frequent sitting, but restricted Leos to "rare to occasional" standing and occasional walking.[6] Dr. Eck also restricted Leos to four-hour maximum workdays.[7]

On June 20, 2003, the Social Security Administration ("SSA") awarded Leos disability benefits beginning in September 2002. The SSA determined that Leos became disabled on March 9, 2002. Leos began receiving a monthly monetary benefit in July 2003.

On August 5, 2003, Leos met with Dr. Eck for a follow-up appointment. Dr. Eck opined that:

> At one point during her period of post-operative recovery I thought she might be able to return to work and sent her back on a limited capacity. However, she has really had significant problems with continuing efforts at trying to work from both a physical and emotional standpoint and I think at this point unless she shows significant improvement over the next several months, for now I would state that she is totally disabled with regard to ability to return to work. I would say barring any significant improvement, this is permanent.

(Administrative Record at 000297.)

On August 30, 2004, Leos met with Dr. Eck for another follow-up appointment. Dr. Eck opined that Leos' "limitations at this point will be permanent and I think she should continue to receive long-term disability benefits."[8]

---

[5] *Id.* at 000281.

[6] *Id.* at 000291.

[7] *Id.*

[8] *Id.* at 000299.

In September 2004, the applicable definition of disability under Leos' LTD benefits plan changed from an "own occupation" test to an "any occupation" test.[9] Thus, in order to qualify for continuing LTD benefits, Leos had to show that after September 10, 2004, she was prevented from performing one or more of the essential duties of *any occupation*. On September 2, 2004, Dr. Eck provided Hartford with a "Physical Capacities Evaluation Form." Dr. Eck determined that Leos could: (1) sit for four hours in an eight-hour workday, (2) stand for 1-2 hours in an eight-hour workday, (3) walk for 2-3 hours in an eight-hour workday, and (4) drive 2 hours in an eight-hour workday. Dr. Eck concluded, however, that Leos could only work a total maximum of four hours per day.[10] Dr. Eck also noted that Leos' condition was "[n]ot likely to change."[11] On September 10, 2004, Hartford notified Leos that she continued to meet the definition of disability under the "any occupation" standard, and remained eligible for LTD benefits.[12]

---

[9] Leos' LTD plan provides the following definition:

**Disability or Disabled** means that during the Elimination Period and for the next 24 months you are prevented by:

1.    accidental bodily injury;
2.    sickness;
3.    Mental Illness;
4.    Substance Abuse; or
5.    pregnancy,

from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are no more than 80% of your Indexed Pre-disability Earnings.

After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation.

*See* Administrative Record at 000005.

[10] *See* Administrative Record at 000366.

[11] *Id*. at 000367.

[12] *See* Administrative Record at 000161 ("We have conducted a thorough review (continued...)

In March 2005, Leos began seeing Susan Baxter, P.A.-C., ("Baxter"), as her primary care physician. On September 16, 2005, Leos and Baxter met to discuss disability forms that needed to be filled out for Hartford. Baxter noted that they:

> discussed the form and the degree of impairment she has. Discussed the fact that she is extremely limited in her ability to stand or walk. Carrying items would be limited to 10 pounds. Limited ability to push and pull because of the lower extremity involvement in this activity. Also unable to drive secondary to the fact she has to wear a foot brace for the foot drop, and she has decreased sensation and strength in the right lower extremity that is permanent.

(Administrative Record at 000304.) Upon examination, Baxter found that Leos:

> Ambulates very slowly and with difficulty. Assisted by a cane. Very difficult for her to get up and down from a chair. Back: There is some diffuse tenderness over the right lower lumbar and SI joint area. Lower Extremities: Coolness of temperature noted of the right lower extremity and right foot compared to the left. Right Lower Extremity: Patient unable to do any type of flexion of the foot. Extension very weak. Extension and flexion at the knee is decreased compared to the left. Ankle reflex absent. Knee jerk reflex diminished compared to the left. Pulses intact and equal in both lower extremities including the dorsalis pedis and the posterior tibialis pulses.

(Administrative Record at 000304.) Baxter diagnosed Leos with chronic right leg neuropathy, right drop foot, and chronic back pain. In the "Physician's Statement of Disability" provided to Hartford, Baxter opined that Leos was: (1) "extremely limited" in standing; (2) "extremely limited" in walking; (3) limited to carrying or lifting 10 pounds; (4) limited in pushing if her lower extremities were involved; and (5) limited in her ability to drive. Baxter also found that Leos was unlimited in her ability to use a

---

[12](...continued)
of all the medical and vocational information in your claim file. Based upon that review, we have determined that you meet the policy definition of Disability and that you will continue to qualify for benefits on and after September 10, 2004.").

keyboard or repetitive hand motion. The report stated that Leos had no limitations on sitting.[13]

On November 14, 2005, Hartford sent Baxter a letter explaining that based on its review of Leos' medical documentation, it had concluded that Leos had the functional capacity to perform a full-time sedentary occupation. Hartford asked Baxter whether she agreed with its assessment of Leos' functional capacity. Hartford also asked Baxter to clarify her finding with regard to Leos' ability to sit in a work setting. Baxter responded that she did not agree with Hartford's conclusions, and opined that Leos "is unable to perform any prolonged sitting for more than 2 hours. This type of prolonged sitting causes increased severe back and leg pain."[14]

On January 4, 2006, Hartford sent Leos a letter requesting that she undergo an FCE in order for Hartford "to gain a better understanding of your medical condition and associated restrictions and/or limitations."[15] On January 24, 2006, Leos underwent an FCE conducted by Kent Reeves, P.T. ("Reeves"). Reeves noted that the purpose of the FCE was to determine Leos' "overall physical capabilities and feasibility to return to work, and to determine the physical barriers that may exist, which prevents her from returning to work."[16] At the outset, Reeves concluded that the results of the FCE were invalid due to Leos' "sub-maximal effort" during several functional tests. Reeves stated that the "overall results of this evaluation do not present a true and accurate representation of [Leos'] overall physical capabilities and tolerances at this time."[17] Nevertheless, Reeves determined that Leos was physically capable and had the ability to tolerate and

---

[13] *See* Administrative Record at 000498.

[14] *Id*. at 000349.

[15] *Id*. at 000442.

[16] *Id*. at 000446.

[17] *Id*.

function minimally at the sedentary-light and sedentary levels of work as defined by the United States Department of Labor. Reeves also determined that Leos had the functional capacity to: (1) frequently sit[18] (33%-85% of a workday), (2) occasionally stand (1%-33% of a workday), and (3) occasionally walk (1%-33% of a workday).

On March 1, 2006, Hartford informed Leos that after reviewing her claim, it determined that she no longer met the plan definition of total disability or disabled. Thus, Hartford terminated her LTD benefits, effective February 28, 2006.[19] Hartford concluded that:

---

[18] Specifically, Reeves stated that Leos sat for 45 minutes with "no objective difficulty observed." *See* Administrative Record at 000451.

[19] *See* Administrative Record at 000146-000150. Hartford based its decision to terminate Leos' LTD benefits on the plan's policy language and all of the "papers" contained in Leos' file, including:

1) A copy of your job description provided by your employer.
2) A physical demand analysis form provided by your employer.
3) A Work and Educational History form completed by you.
4) A Claimant Questionnaire completed by you on 9/13/05.
5) An Attending Physician Statement provided by []Baxter on 9/16/05.
6) A copy of your medical records provided by Dr. Kasner.
7) A copy of your medical records provided by []Baxter.
8) A letter sent to []Baxter and Dr. Kasner on 11/14/05.
9) A response received from []Baxter on 11/22/05.
10) A copy of your Functional Capacity Evaluation (FCE) performed on 1/24/06.
11) A copy of your FCE sent to []Baxter on 2/8/06.
12) An Employability Analysis Report provided by our Rehabilitative Clinical Case Manager on 2/23/06.

*See* Administrative Record at 000147.

you are no longer prevented from performing the essential
duties of your own or any occupation. The FCE results
indicate that you are capable of performing at least a sedentary
to light occupation on a full time basis and two sedentary
occupations have been identified in the national economy for
which you are capable of performing. Therefore you no
longer meet the policy definition of Disability. Both you and
your physician have stated that you could sit up to 2 hours at
a time and although a sedentary occupation requires sitting up
to 8 hours per day, a sedentary occupation does allow for the
opportunity to change positions as needed throughout the day.
Therefore no further benefits are payable to you under this
policy as of 2/28/06 and your LTD benefits will terminate on
that date.

(Administrative Record at 000149.)

On August 24, 2006, Leos appealed the termination of her LTD benefits to Hartford
for a full and fair review of the termination decision.[20] In support of her appeal, Leos
submitted an FCE performed by Wenger on August 21 and 22, 2006. In the FCE, Wenger
noted that Leos:

provided a consistent effort limited by pain during the
Functional Capacity Evaluation. Performance on test items
does corroborate with the initial musculoskeletal evaluation
and test items repeating day 1 to day 2 of testing.
Cardiovascular response to activity was consistent with
maximum effort with expected increases in heart rate in
response to activity. Cardiovascular response to activity also
indicates deconditioning.

Consistent unloading of spine, weight shift off right lower
extremity after test activities.

(Administrative Record at 000324.) Upon evaluation, Wenger determined that Leos could:
(1) sit for 30-45 minutes in an hour with 20 minute durations maximum prior to break to
stand to stretch/work; (2) stand for 15 minutes in an hour; and (3) walk 15-20 minutes in

_____

[20] *See* Administrative Record at 000248-000268.

an hour with maximum continuous walk of 1/3 mile.[21] Wenger opined that Leos could not alternately sit/stand/walk for an eight-hour period of time, but could alternately sit/stand/walk for four hours at one time with frequent position changes.[22]

In November 2006, as part of the appeal process, Hartford obtained a medical record review from Dr. Brian Mercer, M.D.[23] Dr. Mercer determined that there was no objective information in Leos' medical records which would preclude her from functioning at a full-time sedentary level with an opportunity to change position as needed. Specifically, Dr. Mercer concluded that:

> [Leos'] examination shows an objectively stable neurologic examination without evidence of progressive radiculopathy. There are multiple non-organic findings on examination as outlined above. Her examinations are reported as being stable over the past one to two years. During this time period, her treating physicians have indicated a capability of functioning at full-time sedentary level. Her recent reported increased symptoms are not supported by any objective correlate on EMG testing, MRI testing, or clear objective findings on examination. The Functional Capacity Evaluation of January of 2006 also concluded that [Leos] was capable of functioning at a sedentary-light level. Although her follow-up Functional Capacity Evaluation of August of 2006 concluded she could function only at a sedentary level for four hours, this study is of a substantially lower quality objectively as compared to the study of January of 2006. There are no measures of coefficient to variation. Her raw data regarding heart rate changes with reported increased symptoms is not provided. The testing of Waddell's findings is incomplete. The basis for the four-hour restriction is not fully substantiated objectively.

(Administrative Record at 000235.)

---

[21] *Id.* at 000328.

[22] *See* Administrative Record at 000328.

[23] *Id.* at 000228-000235.

On November 28, 2006, Hartford upheld its decision to terminate Leos' LTD benefits. Hartford concluded that:

> given the weight of the evidence, taken as a whole, it is reasonable that [Leos] can perform sedentary work on a full-time basis, and as the Employability Analysis determined that her own occupation is sedentary in nature, she no longer satisfies the definition of disability for any occupation as set forth in the . . . Policy.

(Administrative Record at 000143.)

On October 26, 2007, Leos filed a Complaint and Jury Demand (docket number 1) under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B)[24] to recover LTD benefits. On December 19, 2007, Hartford filed an Answer (docket number 5). On May 1, 2008, Leos filed her "Brief in Support of Petition for Reinstatement of Long Term Disability Benefits" (docket number 18). On July 1, 2008, Hartford filed its "Memorandum in Opposition to Plaintiff's Motion and in Support of Defendant's Motion for Judgment on the Administrative Record" (docket number 19). On August 15, 2008, Leos filed a Reply Brief (docket number 22). On November 20, 2008, Chief Judge Linda R. Reade referred this matter to a Magistrate Judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### III. STANDARD OF REVIEW

"'ERISA provides a plan beneficiary with the right to judicial review of a benefits determination.'" *Shelton v. ContiGroup Companies, Inc.*, 285 F.3d 640, 642 (8th Cir. 2002) (quoting *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998)). Review of

---

[24] 29 U.S.C. § 1132(a)(1)(B) provides in pertinent part:
A civil action may be brought--
    (1) by a participant or beneficiary--
        (B) to recover benefits due to him [or her] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan.

plan determinations is *de novo*, unless the plan provides discretionary authority to the plan administrator "'to determine eligibility for benefits or to construe the terms of the plan.'" *Johnson v. U.S. Bancorp Broad-Based Change in Control Severance Pay Program*, 424 F.3d 734, 738 (8th Cir. 2005) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). In this case, Hartford is given discretion to determine eligibility for plan benefits and interpret the plan's terms.[25] When a plan administrator is given such discretion, the court must review a decision by the administrator for abuse of discretion. *Shelton*, 285 F.3d at 642. "'This deferential standard reflects [the] general hesitancy to interfere with the administration of a benefits plan.'" *Id.* (quoting *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998)). In *Hunt v. Metropolitan Life Insurance Co.*, 425 F.3d 489 (8th Cir. 2005), the Eighth Circuit Court of Appeals described this standard of review as follows:

> Because the plan gives [the plan administrator] discretion to determine eligibility, we review the administrator's decision for abuse of discretion. Under this standard of review, we consider whether the administrator adopted a "reasonable interpretation" of uncertain terms in the plan, and whether the administrator's decision was supported by substantial evidence.

*Id.* at 490 (citations omitted). When the abuse of discretion standard is applied, the reviewing court "must affirm if a 'reasonable person could have reached a similar decision, given the evidence before him [or her], not that a reasonable person would have reached that decision.'" *Smith v. Unum Life Insurance Co. of America*, 305 F.3d 789, 794 (8th Cir. 2002) (quoting *Ferrari v. Teachers Ins. and Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002)). A reasonable decision is a decision which is based on substantial evidence that was before the plan administrator. *Id.* Substantial evidence is evidence

---

[25] *See* Administrative Record at 000020 (The Group Insurance Policy provides that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.").

12

which a reasonable mind could accept as adequate to support a conclusion. *Johnson*, 424 F.3d at 738.

"When reviewing a denial of benefits by an administrator who has discretion[,] . . . a reviewing court, 'must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales.'" *King v. Hartford Life and Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (quoting *Conley v. Pitney Bowes*, 176 F.3d 1044, 1049 (8th Cir. 1999)). Furthermore,

> an administrator with discretion under a benefit plan must articulate its reasons for denying benefits when it notifies the participant or beneficiary of an adverse decision, and the decision must be supported by both a reasonable interpretation of the plan and substantial evidence in the materials considered by the administrator.

*King*, 414 F.3d at 1000.

Recently, the United States Supreme Court determined that a conflict of interest is created when the administer of a benefit plan, both determines whether an employee is eligible for benefits and then pays the benefits. *Metropolitan Life Insurance Co. v. Glenn*, ___ U.S. ___, 128 S. Ct. 2343, 2346 (2008). The United States Supreme Court further determined that "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case." *Id.* (citing *Bruch*, 489 U.S. at 115). In discussing *Glenn*, the Eighth Circuit Court of Appeals noted that:

> the existence of a conflict did not lead the [United States Supreme] Court to announce a change in the standard of review. We are to review an administrator's discretionary benefit determination for abuse of discretion. The [United States Supreme] Court concluded that 'a conflict should be weighed as a factor in determining whether there is an abuse of discretion.'

*Wakkinen v. UNUM Life Insurance Co. of America*, 531 F.3d 575, 581 (8th Cir. 2008) (citation and quotation omitted).

In summary, if the question before the Court is whether the plan administrator abused its discretion, then the Court:

> will not disturb the administrator's decision if it was reasonable. We measure reasonableness by whether substantial evidence exists to support the decision, meaning 'more than a scintilla but less than a preponderance.' *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1162 (8th Cir. 1998). We examine only the evidence that was before the administrator when the decision was made, and we are to determine whether a reasonable person could have -- not would have -- reached a similar decision. *Phillips-Foster v. UNUM Life Ins. Co.*, 302 F.3d 785, 794 (8th Cir. 2002).

*Wakkinen*, 531 F.3d at 583.

## IV. LEGAL ANALYSIS

### A. Whether Hartford Abused Its Discretion in Terminating Leos' LTD Benefits

Leos argues that Hartford abused its discretion in determining that she was capable of performing full-time sedentary work, and subsequently terminating her LTD benefits. Specifically, Leos argues that Hartford's determination that she can perform full-time sedentary work because she is capable of sitting for two hours is flawed. Leos points out that an essential duty of her previous job as a Customer Service Representative is the ability to sit continuously for seven hours in an eight-hour workday.[26] Leos asserts that there is no evidence in the record which suggests she is capable of sitting for seven hours continuously in an eight-hour workday. Leos also argues that Hartford abused its discretion by basing its termination of LTD benefits on an alleged lack of objective evidence of her physical problems. Leos points out that her medical records contain ample

---

[26] *See* Administrative Record at 000436 (the "Physical Demands Analysis Form" for the Customer Service Representative job requires the ability to sit continuously for seven hours).

objective evidence that she suffers from right foot drop,[27] right leg weakness and numbness,[28] diminished sensation in her right leg,[29] and temperature differences between her two lower extremities.[30] Leos concludes that based on the foregoing evidence:

> Hartford granted [her] long term disability benefits, first under the 'own occupation' standard[, and] then, subsequently, under the 'any occupation' standard. There is certainly nothing in the records which indicated Leos' symptoms or condition has improved, making Hartford's present denial on the grounds of lack of objective evidence particularly inappropriate.

(*See* Leos' Brief at 16.) Lastly, Leos argues that Hartford abused its discretion by failing to address the extensive medical evidence relating to her disability. Specifically, Leos argues that Hartford:

> never made any inquiry of Dr. Eck with respect to Leos' condition or the restrictions imposed upon her, which [Dr.] Eck had indicated were 'likely to remain unchanged." Nor has Hartford addressed the consistent conclusion of Leos' doctors, including Dr. Eck, Dr. Found, Dr. Worrell, two other FCE evaluators and previous Hartford personnel that Leos is disabled and incapable of performing sedentary work.

(*See* Leos' Brief at 18-19.)

Under ERISA, a plan administrator must take "into account all comments, documents, records, and other information submitted by the claimant relating to the claim." 29 C.F.R. § 2560.503-1(h)(2)(iv). "A plan administrator abuses its discretion when it ignores relevant evidence." *Willcox v. Liberty Life Assurance Co. of Boston*, 552 F.3d 693, 701 (8th Cir. 2009); *see also Norris v. Citibank, N.A. Disability Plan (501)*, 308 F.3d 880, 885 (8th Cir. 2002) (finding that a plan administrator abused its discretion

---

[27] *See* Administrative Record at 000274-000275, 000277, 000279, 000294, 000297, 000299, 000302, 000304, 000633-000634.

[28] *Id.*

[29] *Id.* at 000294.

[30] *Id.* at 000294, 000304.

by failing to "address the extensive medical evidence relating to [the claimant's] disability or the consistent conclusions of her doctors and various [plan administrator] personnel that she could not work."); *Metropolitan Life Insurance Co. v. Conger*, 474 F.3d 258, 265 (6th Cir. 2007) (determining that a plan administrator abused its discretion when it "focused on slivers of information that could be read to support a denial of coverage and ignored-- without explanation--a wealth of evidence that directly contradicted its basis for denying coverage."). While an ERISA plan administrator is not required to accord special deference to the opinions of a claimant's treating physician, the plan administrator may not "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Willcox*, 552 F.3d at 701.

Additionally, the plan administrator

> must articulate its reasons for denying benefits when it notifies
> the participant or beneficiary of an adverse decision, and the
> decision must be supported by both a reasonable interpretation
> of the plan and substantial evidence in the materials considered
> by the administrator.

*King*, 414 F.3d at 1000. A decision is reasonable "'if a reasonable person could have reached a similar decision, given the evidence before him [or her], not that a reasonable person would have reached that decision.'" *Clapp v. Citibank, N.A. Disability Plan (501)*, 262 F.3d 820, 828 (8th Cir. 2001) (quoting *Cash v. Wal-Mark Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997)). Substantial evidence is evidence which a reasonable mind could accept as adequate to support a conclusion. *Johnson*, 424 F.3d at 738.

Here, the record contains the following pertinent evidence: (1) In September 2002, Hartford granted Leos LTD benefits; (2) in January 2003, an FCE found that Leos could not perform an eight-hour workday and could only alternately sit/stand/walk a maximum of four hours in a workday; (3) in January 2003, Dr. Eck opined that Leos could only perform a four-hour maximum workday; (4) in June 2003, Leos was awarded disability benefits from SSA; (5) in August 2003, Dr. Eck opined that Leos was "totally disabled

16

with regard to ability to return to work"; (6) in August 2004, Dr. Eck opined that Leos' limitations were permanent and she should continue to receive LTD benefits; (7) in September 2004, Dr. Eck again concluded that Leos could only work a maximum four-hour workday; (8) in September 2004, Hartford determined that Leos continued to meet the definition of disability and remained eligible for LTD benefits; (9) in November 2005, Baxter limited Leos to sitting for two hours in an eight-hour workday; (10) in January 2006, Leos underwent an FCE at Hartford's request, and the evaluator determined that she could perform full-time light sedentary work; (11) in March 2006, Hartford terminated Leos' LTD benefits; (12) in August 2006, Leos appealed the termination of her LTD benefits and provided Hartford with an FCE which stated she could only alternately sit/stand/walk for four hours in a workday; (13) in November 2006, Dr. Mercer, a medical reviewer for Hartford, determined that there was no objective evidence which precluded Leos from performing a full-time sedentary job; and (14) in November 2006, Hartford upheld its decision to terminate Leos' LTD benefits.

Hartford's decision to terminate Leos' LTD benefits rests primarily on two pieces of evidence. First, Hartford relied on the findings of the January 2006 FCE, conducted at Hartford's request, which concluded that Leos could perform full-time light sedentary work. Second, Hartford relied on the conclusion of Dr. Mercer, its own medical reviewer, that there was no objective evidence in Leo's medical records which precluded her from performing a full-time sedentary job.

Hartford failed to address, however, the extensive medical evidence relating to Leos' disability or the consistent conclusions of her doctors and earlier Hartford determinations that she could not work. *See Norris*, 308 F.3d at 885. Specifically, Hartford failed to address pertinent aspects of Leos' August 2006 FCE, including the fact that the 2006 FCE was consistent with Leos' January 2003 FCE, the opinions of Dr. Eck, and the opinion of Baxter. All of these pieces of medical evidence are consistent in finding that Leos is limited to working a maximum of four hours per day and limited to sitting no more than two hours in an eight-hour workday. Prior to March 2006, Hartford apparently

found that Leos' January 2003 FCE and the opinions of Dr. Eck supported a finding that Leos was disabled and eligible for LTD benefits, because she received LTD benefits from September 2002 through February 28, 2006. Therefore, it begs the question of how the August 2006 FCE, which is consistent with the January 2003 FCE and consistent with the opinions of Dr. Eck, no longer supports a finding that Leos is disabled. Hartford argues that the January 2006 FCE, which the evaluator found to be invalid, is more accurate than the August 2006 FCE. Dr. Mercer opined that the January 2006 FCE had better internal tests for determining malingering than the August 2006 FCE. The Court finds this argument unconvincing. The August 2006 FCE noted that Leos:

> provided a consistent effort limited by pain during the Functional Capacity Evaluation. Performance on test items does corroborate with the initial musculoskeletal evaluation and test items repeating day 1 to day 2 of testing. Cardiovascular response to activity was consistent with maximum effort with expected increases in heart rate in response to activity. Cardiovascular response to activity also indicates deconditioning.

> Consistent unloading of spine, weight shift off right lower extremity after test activities.

(Administrative Record at 000324.) The January 2003 FCE contains nearly identical language as the August 2006 FCE with regard to Leos' effort during testing. Hartford fails to explain why it accepted the 2003 FCE, but now discounts the August 2006 FCE based on Leos' level of effort during testing. Hartford fails to explain or point to any medical evidence which supports its change in not accepting the 2006 FCE.

Furthermore, Hartford's conclusion that Leos can perform full-time sedentary work because she is capable of sitting for two hours in an eight-hour workday is inconsistent with its own "Physical Demands Analysis Form" for the Customer Service Representative job it claims Leos is capable of performing. According to Hartford's own documents, the Customer Service Representative job requires the ability to sit continuously for seven

hours.[31] Moreover, even if Leos was only required to sit for two hours in an eight-hour workday because she could change positions to standing and walking during the workday, the January 2006 FCE, which Hartford relies on, limits Leos to occasional standing (1%-33% of a workday) and occasional walking (1%-33% of a workday) during an eight-hour workday. Even assuming Leos could perform at her maximum ability, under the January 2006 FCE, she could only stand 2.6 hours and walk for 2.6 hours in an eight-hour workday. Thus, between sitting, standing, and walking, Leos could not meet the demands of a full eight-hour workday. This is significant because the LTD plan includes the ability to "be at work for the number of hours in your regularly scheduled workweek" in its definition of "essential [work] duty."[32] Because Leos could not perform an essential duty of her job, she would be considered disabled under the LTD plan.[33] Therefore, after reviewing the entire record, the Court finds that Hartford's conclusion that Leos can perform full-time sedentary work is not supported by substantial evidence. *Hunt*, 425 F.3d at 490.

This case is strikingly similar to *Norris v. Citibank, N.A. Disability Plan (501)*, 308 F.3d 880 (8th Cir. 2002). In *Norris*, the claimant developed low back pain which required surgery. *Id*. at 882. After two unsuccessful surgeries, the claimant was awarded LTD benefits through a company group insurance plan. *Id*. For two years, the insurance company "continued to review [the claimant's] status, at all times concluding that she was eligible for disability benefits under the 'own occupation' standard." *Id*. After two years, the insurance company determined that the claimant met the definition of disability under

---

[31] *See* Administrative Record at 000436. Hartford also identified the occupation of a Customer Complaint Clerk as a sedentary job Leos could perform. *Id*. at 000149. The record contains an "Occupational Description" for the Customer Complaint Clerk position, but does not appear to include "Physical Demands Analysis Form." *Id*. at 000426-000429.

[32] *See* Administrative Record at 0005.

[33] *Id*.

the "any occupation" standard. *Id.* at 882-83. A few months after determining that the claimant was disabled under the "any occupation" standard, the insurance company spoke with one of her doctors, and the doctor suggested that the claimant may not be permanently disabled. *Id.* at 883. The insurance company performed an FCE on the claimant. *Id.* The FCE evaluator determined that the claimant's evaluation "'showed symptom magnification and hence is not really valid' and that he doubted 'that her pain is consistently that severe.'" *Id.* As a result, the insurance company terminated the claimant's LTD benefits. *Id.* The Eighth Circuit Court of appeals determined that the insurance company abused its discretion in terminating the claimant's LTD benefits. *Id.* at 885.

Similar to *Norris*, in September 2004, Hartford determined that Leos continued to be disabled and entitled to LTD benefits. Then in March 2006, and on the basis of no new medical evidence, Hartford concluded that Leos was not disabled and could perform sedentary work under the "any occupation" standard. *Norris*, 308 F.3d at 885. Like *Norris*, Hartford seized on Baxter's failure to include sitting limitations in a September 2005 disability form, which she later amended to include a two-hour sitting limitation; the report of a medical review doctor who opined that there was no objective medical evidence to explain Leos' leg, back, and foot problems; and a FCE report which indicated Leos provided "sub-maximal effort" during testing, to support its decision to terminate Leos' LTD benefits. *Id.* As in *Norris*, Hartford failed to "address the extensive medical evidence" relating to Leos' disability "or the consistent conclusions of her doctors" and earlier Hartford decisions "that she could not work." *Id.* Moreover, Hartford does not attempt to reconcile its conclusion in September 2004 that Leos was unable to perform any sedentary jobs, with its conclusion in March 2006 that she could perform the sedentary jobs of Customer Service Representative or Customer Complaint Clerk. *Id.* Thus, the Court finds "little, if any, evidence in the record from which a reasonable person could find" that Leos "was not disabled under the terms of the Plan." *Id.* Accordingly, the Court determines that Hartford abused its discretion in terminating Leos' LTD benefits.

*Id.*; *see also Willcox*, 552 F.3d at 701 ("A plan administrator abuses its discretion when it ignores relevant evidence."); *Conger*, 474 F.3d at 265 (a plan administrator abuses its discretion when it "focuse[s] on slivers of information that could be read to support a denial of coverage and ignore[s]--without explanation--a wealth of evidence that directly contradict[s] its basis for denying coverage. Such a decision-making process is not deliberate or principled, and the explanation provided was far from reasoned, as it failed to address any contrary evidence.").

### B. Attorney Fees

Pursuant to 29 U.S.C. § 1132(g)(1), a court may, in its discretion, award reasonable attorney fees and costs to either party under ERISA. 29 U.S.C. § 1132(g)(1).[34] A court considering whether to award attorney fees under ERISA should "'apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts.'" *Welsh v. Burlington Northern, Inc., Employee Benefits Plan*, 54 F.3d 1331, 1342 (8th Cir. 1995) (quoting *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984)). "[A]lthough there is no presumption in favor of attorney fees in an ERISA action, a prevailing plaintiff rarely fails to receive fees." *Starr v. Metro Systems, Inc.*, 461 F.3d 1036, 1041 (8th Cir. 2006). *See also Martin v. Arkansas Blue Cross and Blue Shield*, 299 F.3d 966, 972 (8th Cir. 2002) ("[F]ew, if any, fee awards have been denied a prevailing plaintiff in ERISA cases nationwide. This is true even though nine of the circuit courts of appeals did not employ any kind of presumption in favor of fees. Thus, the absence of a presumption has obviously not doomed ERISA plaintiffs' attorney fee requests."). When determining whether to award fees, the Eighth Circuit has set forth the following five non-exclusive factors for consideration by a court exercising its discretion:

---

[34] 29 U.S.C. § 1132(g)(1) provides:

> (1) In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

(1) the degree of culpability or bad faith of the opposing party;
(2) the ability of the opposing party to pay attorney fees;
(3) whether an award of attorney fees against the opposing
party might have a future deterrent effect under similar
circumstances; (4) whether the parties requesting attorney fees
sought to benefit all participants and beneficiaries of a plan or
to resolve a significant legal question regarding ERISA itself;
and (5) the relative merits of the parties' positions.

*Starr*, 461 F.3d at 1041 (citing *Martin*, 299 F.3d at 969 and n.4). Hartford presents no argument with regard to Leos' attorney fees request. Having considered the *Starr* factors, the Court finds that an award of attorney fees is appropriate.

## V. CONCLUSION

The Court concludes that Hartford abused its discretion in terminating Leos' LTD benefits, and recommends that this matter should be reversed and remanded for reinstatement of LTD benefits from February 28, 2006. The Court also recommends that Leos should be awarded attorney fees.

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the District Court **REMAND** this matter to the plan administrator for reinstatement of long-term disability benefits and **GRANT** an award of attorney fees to Leos.

*The parties are advised, pursuant to 28 U.S.C. § 636(b)(1)(B), that within ten (10) days after being served with a copy of these proposed findings and recommendations, any party may serve and file written objections with the District Court.*

DATED this ___4th___ day of March, 2009.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA