# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ELIZABETH VOLLENWEIDER-LEOS, <br><br> Plaintiff, <br><br> vs. <br><br> HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, <br><br> Defendant. | No. 07-CV-0119-LRR <br><br><br> **ORDER** |

_____

## I. INTRODUCTION

The matters before the court are the Objections (docket no. 27) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation ("Report and Recommendation") (docket no. 26), filed by Defendant Hartford Life and Accident Insurance Company. In the Report and Recommendation, Judge Scoles advises the undersigned to reverse and remand the instant action to Defendant for reinstatement of Plaintiff Elizabeth Vollenweider-Leos's long-term disability ("LTD") benefits. Judge Scoles also recommends that the court award Plaintiff attorney fees.

## II. RELEVANT PRIOR PROCEEDINGS

On October 26, 2007, Plaintiff filed the Complaint (docket no. 1). On May 1, 2008, Plaintiff filed her Brief in Support of Reinstatement of LTD benefits ("Plaintiff's Brief") (docket no. 18). On July 1, 2008, Defendant filed its Resistance (docket no. 19). On August 15, 2008, Plaintiff filed her Reply (docket no. 22). On March 4, 2009, Judge Scoles filed the Report and Recommendation. On March 18, 2009, Defendant filed its Objections. On March 30, 2009, Plaintiff filed her Response (docket no. 28).

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2005); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(c)(3) (stating a judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions"). It is reversible error for the district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600; *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996).

## IV. ANALYSIS

Defendant raises five Objections to the Report and Recommendation. Upon de novo review of the record, the court shall sustain the Objection pertaining to the Report and Recommendation's characterization of Plaintiff's sitting limitations. The other Objections are meritless and the court shall overrule them. Therefore, except for the characterization of Plaintiff's sitting limitations, the court shall fully adopt the Report and Recommendation.

### A. Summary Of Objections

Defendant objects to the Report and Recommendation on five grounds: that Judge Scoles (1) impermissibly re-weighed facts in the Administrative Record (docket no. 13) by rejecting Defendant's reliance on a non-treating physician's conclusions; (2) impermissibly

2

re-weighed facts in the Administrative Record by misconstruing evidence of Plaintiff's sedentary occupation; (3) impermissibly re-weighed facts in the Administrative Record by misconstruing Defendant's conclusion regarding Plaintiff's ability to sit; (4) erroneously held that Defendant should have deferred to its prior decision to award LTD benefits to Plaintiff; and (5) erroneously based the Report and Recommendation on *Norris v. Citibank, N.A. Disability Plan (501)*, 308 F.3d 880 (8th Cir. 2002).

Because the fifth Objection, that is, whether reliance on *Norris* is proper, is central to the Report and Recommendation's conclusions, the court will address that issue first. The court will then examine the remaining Objections.

### *B.* **Norris**

Defendant argues that Judge Scoles improperly relied on *Norris* because *Norris* is distinguishable from the instant action. Defendant argues that, unlike the plan administrator in *Norris*, its reversal of Plaintiff's LTD benefits was based on new medical evidence: (1) an interview with one of Plaintiff's primary care providers, Susan Baxter, PA-C; (2) Plaintiff's "most recent medical records;" and (3) the report of one of Defendant's independent reviewing physicians, Dr. Mercer. Objections at 9.

There are striking similarities between the instant action and *Norris*. Like the instant action, the plan administrator in *Norris* approved a claimant's application for disability benefits under the plan administrator's "own occupation" standard and under its "any occupation" standard. *Norris*, 308 F.3d at 882-83. Also, the plan administrator in *Norris* terminated the claimant's LTD benefits based on: (1) conversations with the claimant's physician; (2) a Functional Capacity Evaluation ("FCE") that was requested by the plan administrator and determined that the claimant's pain was not as severe as claimed and that the results were invalid because the claimant was self-limiting; and (3) a neurologist's inability to explain the claimant's pain in other areas. *Id.* at 883. *Norris* held that the plan administrator abused its discretion when it relied on this information to deny

3

benefits without "address[ing] the extensive medical evidence relating to [the claimant's] disability or the consistent conclusions of her doctors and various [. . .] personnel [of the plan administrator] that she could not work." *Id.* at 885.

The instant action is similar. Defendant argues that "new medical evidence" distinguishes this case from *Norris*. The evidence at issue is: (1) Baxter's September 16, 2005 report on Plaintiff's ability to sit; and (2) written and verbal communications with Baxter. However, *Norris* found that similar statements were merely "equivocal" and that the plan administrator "seized upon" them to change a disability status. The *Norris* evidence included: a treating physician's statement that (1) he was not currently prescribing the claimant pain medication; (2) the claimant could "try" a job that allowed her to change positions; and (3) the claimant "might be afraid to return to work." *Id.* The court finds that there is no new medical evidence to distinguish the instant action from *Norris*.

Further, the January 2006 FCE upon which Defendant relied to reverse its LTD benefits award is similar to the FCE requested by the plan administrator in *Norris*. Like *Norris*, Defendant requested the January 2006 FCE after Plaintiff's physician made equivocal statements about Plaintiff's ability to sit. The portions of the January 2006 FCE that were determinative of Plaintiff's benefits were nearly identical to Plaintiff's previous and subsequent FCEs.[1] The only difference in the January 2006 FCE is that the examiner concluded that: (1) the FCE was invalid due to self-limiting; and (2) Plaintiff had not tried

---

1 The January 2006 FCE states that Plaintiff could sit "frequent[ly]" (33-65% of day), stand "occasional[ly]" (1-33% of day), and walk "occasional[ly]" (1-33% of day). R. at 315. The August 2006 FCE states that Plaintiff could sit "frequent[ly]" (34-66%), stand "occasional[ly]," (10-33%), and walk "occasional[ly]," (10-33%). *Id.* at 327. The January 2003 FCE states that Plaintiff could sit "frequent[ly] (34-66%), stand "rare to occasional[ly]" (where rare is 0-10% and occasional is 10-33%), and walk "occasional[ly]" (10-33%). *Id.* at 283. Neither the January 2006 FCE nor any other evidence explains why a person with the same physical capability percentages is disabled in 2004 but is not disabled in 2006.

hard enough. Also, the examiner in the January 2006 FCE stated, without explanation, that Plaintiff was capable of full-time sedentary employment. In *Norris*, the examiner of the FCE ordered by the plan administrator stated that the claimant was self-limiting and magnifying her pain. *Norris* held that these observations were not substantial evidence in the face of consistent evidence to the contrary. The same is true here. Therefore, Defendant's reliance on the January 2006 FCE does not distinguish the instant action from *Norris*.

There is only one substantial difference between *Norris* and the instant case—Defendant's reliance on Dr. Mercer's review of Plaintiff's medical records. As explained in the following section, the Report and Recommendation correctly found that no reasonable person would rely on Dr. Mercer's record to terminate Plaintiff's benefits in light of the Administrative Record.

Accordingly, the court shall overrule this Objection.

### *C. Re-Weighing The Evidence*

Defendant argues that the Report and Recommendation did not apply the proper standard of review. The parties agree that the abuse of discretion standard of review governs. The abuse of discretion standard of review dictates that a court should find a plan administrator's decision to be reasonable "if a reasonable person *could* have reached a similar decision [. . .] not that a reasonable person *would* have reached that decision." *Clapp v. Citibank, N.A. Disability Plan (501)*, 262 F.3d 820, 828 (8th Cir. 2001) (quoting *Cash v. Wal-Mark Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997)) (emphasis in original). However, even under an abuse of discretion standard, "an administrator may not 'arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.'" *Wilcox v. Liberty Life Assur. Co.*, 552 F.3d 693, 701 (8th Cir. 2009) (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003)); *see also Norris*, 208 F.3d at 885.

5

### 1. Dr. Mercer's conclusions

Defendant argues that the Report and Recommendation improperly rejected its reliance on Dr. Mercer's conclusions. Dr. Mercer is one of Defendant's independent physician reviewers. He reviewed Plaintiff's claim file. Defendant claims that the Report and Recommendation "did not identify a flaw in Dr. Mercer's reasoning or any relevant evidence that Dr. Mercer failed to consider. It simply rejected his conclusion." Objections at 3. Defendant states that this analysis is inconsistent with the abuse of discretion standard of review.

In his report, Dr. Mercer concluded that "the record does not include objective information that would preclude [Plaintiff] from functioning at a full-time sedentary level with an opportunity to change position as necessary." R. at 234. In support of his conclusions, Dr. Mercer pointed to Plaintiff's unchanged condition and Plaintiff's January 2006 FCE. Dr. Mercer believed that Plaintiff's January 2006 FCE showed that Plaintiff could perform full-time sedentary work and should be given more weight than her August 2006 FCE, which determined that Plaintiff could only perform four hours of sedentary work per day. Dr. Mercer believed that the January 2006 FCE was superior to the August 2006 FCE because it contained better objective verifications of Plaintiff's efforts. Dr. Mercer also stated that Plaintiff's treating physicians had previously found Plaintiff was capable of full-time sedentary employment. These conclusions were inconsistent with those of Plaintiff's treating physicians, Dr. Kevin R. Eck, M.D., and Baxter.

An independent reviewing physician's opinions may be sufficient evidence to deny benefits. *Hunt v. Met. Life Ins. Co.*, 425 F.3d 489, 491 (8th Cir. 2005). Further, "[w]hen there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits *unless the record does not support denial*." *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006) (emphasis added) (citing *Coker v. Metro. Life Ins. Co.*, 281 F.3d

6

793, 799 (8th Cir. 2002)); s*ee also Weidner v. Federal Exp. Corp.*, 492 F.3d 925, 930 (8th Cir. 2007) (stating that courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation"). Stated another way, plan administrators may obtain a non-treating professional review of a claimant's medical records, but they are "'not free to accept [a reviewing physician's report] without considering whether its conclusions follow logically from the underlying medical evidence.'" *Wilcox*, 552 F.3d at 700-01 (quoting *Abram v. Cargill, Inc.*, 395 F.3d 882, 887 (8th Cir. 2005)).

Defendant relies on *Hunt* to support its position. Unlike *Hunt*, where the plan administrator denied the claimant's *initial* application for LTD benefits based on a lack of objective evidence in the record, Defendant previously concluded that Plaintiff was eligible for LTD benefits based on her medical records. As the Report and Recommendation notes, the January 2003 FCE and the August 2006 FCE contain substantially the same language, both in terms of the effort Plaintiff expended and in terms of Plaintiff's physical capabilities. Even Dr. Mercer opines that Plaintiff's "examinations are reported as being stable over the past one to two years [preceding November 2006]." R. at 235. Defendant fails to provide an explanation for why it now deems it appropriate to reject the previous methods and opinions of Plaintiff's physicians. Neither Dr. Mercer nor Defendant explain their conclusion that, from 2002 to 2005, Plaintiff was unable to perform a sedentary occupation for more than four hours per day, but that in February of 2006, she could suddenly perform a sedentary occupation full time.

Additionally, Defendant's reliance on Dr. Mercer's report as a basis to terminate LTD benefits is unreasonable. Dr. Mercer's report is inconsistent with the Administrative Record. In his report, Dr. Mercer opines that, in the one to two years prior to his review, "[Plaintiff's] treating physicians have indicated a capability of functioning at a full-time sedentary level." R. at 235. The record does not support this conclusion. For example,

7

Dr. Mercer notes that, on September 2, 2004, Dr. Eck stated that Plaintiff was capable of sitting eight hours per day; however, on the same form, Dr. Eck stated that Plaintiff was only capable of sitting for four hours during an eight-hour work day and only able to work for four consecutive hours per day. *Id.* at 366. Defendant's own records indicate that it understood Dr. Eck limited Plaintiff to four-hour workdays. Additionally, when Defendant asked Baxter for information on Plaintiff's physical capabilities in November of 2005, Baxter clearly stated that she did not agree Plaintiff was capable of performing full-time sedentary work. Since this mischaracterization goes to the heart of Dr. Mercer's findings, the Report and Recommendation was correct in finding that it was unreasonable for Defendant to rely on Dr. Mercer's report over all the other conflicting evidence. *See Wilcox*, 552 F.3d at 701 ("It may also be that [the reviewing physician] was simply careless in how he chose to summarize a large volume of conflicting data. It was nevertheless an abuse of discretion for [the plan administrator] to rely on his demonstrably incorrect conclusion.").

In light of the foregoing, the court finds that no reasonable person would have relied on Dr. Mercer's conclusion that Plaintiff could work full time. Accordingly, the court shall overrule this Objection.

### 2. *Requirements of sedentary occupation*

Defendant argues that the Report and Recommendation incorrectly attributed an opinion to Defendant. However, the opinion at issue—that Plaintiff's sedentary occupation required her to sit for seven hours in a work day—is reflected in the record. In Defendant's "Summary Detail Report," Defendant notes that "Per review of job demands, [Plaintiff] sat and keyboarded 7hrs/d." R. at 65; *see also* R. at 143 (stating Plaintiff is capable of performing her own occupation because it is sedentary). Consequently, the Report and Recommendation properly credited this opinion to Defendant.

Defendant makes an alternative argument: even if it believed that Plaintiff was

8

capable of sitting for seven hours in a work day, Plaintiff was able to work in a full-time sedentary occupation because she could alternate between sitting and other positions. Defendant's records state that Plaintiff's job requires her to *sit* seven hours per day. Defendant's records do not support a conclusion that Plaintiff could alternately sit, stand or walk seven hours in a day. None of Plaintiff's FCEs show that Plaintiff can sit more than 67% of her work day. Even the January 2006 FCE upon which Defendant unreasonably relied states that Plaintiff is only capable of sitting 33-65% of her work day. Seven hours is substantially longer than 65% of a work day. Therefore, Defendant's conclusion that the Administrative Record supports its finding that Plaintiff could return to her own sedentary occupation is unreasonable.

Accordingly, the court shall overrule this Objection.

### 3. *Plaintiff's ability to sit*

Defendant argues that the Report and Recommendation erroneously attributed another opinion to it—that Plaintiff could only sit for a total of two hours per day. Defendant also argues that the Report and Recommendation incorrectly used that figure to calculate how many hours Plaintiff could work in a day.

The court recognizes that the Report and Recommendation incorrectly stated that Defendant believed Plaintiff was restricted to a total of two hours of sitting in a work day. However, this statement does not impact the substantive conclusions that are contained in the Report and Recommendation. As previously stated, the January 2006 FCE states that Plaintiff has the same limitations on sitting, standing and walking as the January 2003 and August 2006 FCEs, yet the January 2006 FCE provides no explanation why, all of a sudden, Plaintiff could work full time, while all the other FCEs limited Plaintiff to a four-hour workday.

Accordingly, the court shall modify the Report and Recommendation to the extent that it attributes to Defendant a belief that Plaintiff's sitting capacity was restricted to a

total of two hours and shall adopt the Report and Recommendation as amended.

### D. *Reasonableness of Reversal of Award Benefits*

Defendant also argues that the Report and Recommendation improperly held that it was bound by its prior decision awarding LTD benefits to Plaintiff. Defendant claims its reversal of benefits was reasonable "in light of the information in the record in 2006 that was not in the record in 2004." Objections at 7. Defendant offers three pieces of new information in support of this argument: (1) a comparison of the January 2006 FCE's finding that Plaintiff "sat for 45 minutes with no objective difficulty observed" (R. at 315) with the August 2006 FCE's finding that Plaintiff could not sit more than 30-35 minutes in an hour; (2) Baxter's "contradictory medical records;" and (3) Dr. Mercer's report.

The Report and Recommendation correctly rejected Defendant's reliance on the January 2006 FCE based on *Nash* for the reasons described in Section IV.B. *Nash* also dictates that the court should reject Defendant's decision to base a benefits determination on Baxter's purportedly "contradictory" records. Although Baxter's September 16, 2005 report stated that Plaintiff did not have any sitting limitations, her opinion about Plaintiff's ability to work full time never changed. For the reasons stated in section IV.B, this statement, which Baxter later unequivocally clarified, is not substantial evidence in light of the Administrative Record. Finally, the Report and Recommendation correctly rejected Defendant's reliance on Dr. Mercer's report for the reasons delineated in section IV.C.1. Because the court rejects Defendant's reliance on these three pieces of evidence, the court finds that Defendant made its decision to terminate Plaintiff's benefits "on the basis of no new medical evidence" and, therefore, unreasonably reversed its approval of benefits.

Accordingly, the court shall overrule this Objection.

### V. CONCLUSION

In light of the foregoing, **IT IS ORDERED THAT**:

(1) The Objections (docket no. 27) are **SUSTAINED IN PART** with respect to

the two-hour sitting limitation and are **OVERRULED** in all other respects;

(2) The Report and Recommendation (docket no. 26) is **ADOPTED AS MODIFIED** and this matter is **REMANDED** to the plan administrator for reinstatement of LTD benefits;

(3) The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff;

(4) Plaintiff may file an application for attorneys' fees within **10 court days of the issuance of the instant order**. Defendant may respond to any such application within **10 court days** of the application; and

(5) The Clerk of Court is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

**DATED** this 6th day of October, 2009.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA